Aurelio CASTILLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–00–00360–CR.

Court of Appeals of Texas, Dallas.

Oct. 17, 2001.

358

John Hampton Read, Law Office of Garcia & Read, P.C., Dallas, Danny D. Burns, Law Offices of Danny D. Burns, Fort Worth, for Appellant.

William T. (Bill) Hill, Jr., Lisa Smith Braxton, Asst. Dist. Atty., Dallas, for State.

Before Justices WHITTINGTON, WRIGHT and MALONEY.[1]

## OPINION

WHITTINGTON, Justice.

Aurelio Castillo appeals his conviction for accepting a political contribution from a corporation in violation of chapter 253 of the Texas Election Code. *See* TEX. ELEC. CODE ANN. §§ 253.003(b), 253.094(a) (Vernon Supp.2001). In three points of error, appellant contends his constitutional right to due process was violated when the State indicted and prosecuted him for an offense not defined or criminalized by statute. In two additional points, appellant contends the trial judge erred in admitting evidence of an extraneous offense. For the reasons that follow, we affirm the trial court's judgment.

### BACKGROUND

Appellant does not challenge the sufficiency of the evidence; thus, only a brief

1. The Honorable Frances J. Maloney, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

recitation of the facts is necessary. In 1996, while running for the office of Dallas County Constable of Precinct 6, appellant used a corporate American Express card bearing his name and the name of Rubealcaba Enterprises to pay for various campaign expenses. Appellant's personal friend, Steve Rubealcaba, gave appellant the credit card to use for personal expenses because appellant was "in between jobs." Appellant used the credit card to pay for campaign signs and postage for campaign mailers in addition to some personal expenses. On his campaign finance reports, appellant listed the $3465 expenditure for campaign signs as a personal loan from Steve Rubealcaba but did not include the $800 in postage charged to the credit card.

Appellant was indicted for accepting an illegal campaign contribution. Appellant pleaded not guilty, but was convicted by a jury and sentenced to six years' confinement, probated for six years.[2] This appeal followed.

### THE TEXAS ELECTION CODE

In his first three points of error, appellant contends he was denied due process of law and his constitutional right to notice when the State indicted and prosecuted him for an offense not criminalized by Texas statute. Specifically, appellant contends the election code does not prohibit him from accepting corporate contributions or expenditures but only criminalizes the making of such contributions or expenditures. We disagree.

Section 253.003(b) of the Texas Election Code provides that a "person may not knowingly accept a political contribution the person knows to have been made in violation of this chapter." TEX. ELEC.CODE ANN. § 253.003(b) (Vernon Supp.2001).

This language criminalizes the acceptance of political contributions that are made in violation of other sections of chapter 253. *See Fogo v. State*, 830 S.W.2d 592, 594 (Tex.Crim.App.1992). We look to other sections of chapter 253 to determine under what circumstances it is unlawful to make political contributions. *Fogo*, 830 S.W.2d at 594. Section 253.094(a) provides that a "corporation or labor organization may not make a political contribution or political expenditure that is not authorized by this subchapter." TEX. ELEC.CODE ANN. § 253.094(a) (Vernon Supp.2001). Thus, a corporation may not make, and a person may not accept from a corporation, a political contribution or expenditure unless the expenditure is authorized by chapter 253, subchapter D of the election code. *See* TEX. ELEC.CODE ANN. §§ 253.003(b) & 253.094(a) (Vernon Supp.2001).

In this case, appellant was charged with accepting "a political contribution from a corporation, to-wit: Rubealcaba Enterprises, Inc.," knowing the contribution was prohibited. The plain language of section 253.003(b) provides that a person may not knowingly *accept* a political contribution or expenditure made in violation of the chapter. Section 253.094 prohibits a corporation from making a contribution or expenditure to a candidate unless it falls within one of the limited exceptions contained in chapter 253, subchapter D. Thus, the election code clearly provides (i) it is a crime to accept a contribution or expenditure made in violation of chapter 253 and (ii) under section 253.094, a corporation is prohibited from contributing to an individual candidate's campaign fund. The indictment tracked the language of section 253.003(b) by charging appellant with accepting a contribution which was prohibited, i.e., that was made in violation of the chapter.

---

**2.** Appellant was also indicted for bribery but was acquitted on that charge.

In reaching this conclusion, we reject appellant's argument that the court of criminal appeals's holding in *Fogo* requires we reverse his conviction and dismiss the indictment. The law and facts in the *Fogo* case are distinctly different. Fogo was indicted for knowingly making a political contribution that exceeded one hundred dollars. *Fogo,* 830 S.W.2d at 593; *see* Tex. Elec.Code Ann. §§ 253.003(a), 253.033(a) (Vernon Supp.2001). Fogo challenged the indictment on the ground it failed to allege an offense against a valid penal law. The trial judge denied Fogo's motion to quash the indictment and subsequently found him guilty as charged. After the court of appeals affirmed his conviction, Fogo further appealed his case to the court of criminal appeals. *Fogo,* 830 S.W.2d at 593. Fogo claimed (i) the indictment charged him with conduct that did not constitute an offense under the election code sections relied upon by the State and (ii) if it was the Legislature's intent in enacting those sections to criminalize such conduct, then those sections, as applied, were so indefinite as to violate due process of law and due course of law of both the United States and Texas constitutions. *Fogo,* 830 S.W.2d at 594. In response, the State argued the indictment was proper because the law prohibited a person from knowingly making a political contribution that "knowingly cause[d] a violation of any other provision." *Fogo,* 830 S.W.2d at 594.

The court of criminal appeals disagreed with the State and reversed Fogo's conviction. *Fogo,* 830 S.W.2d at 594–96. The court reasoned that although section 253.003(a) prohibits a person from knowingly making a political contribution in violation of chapter 253, it "does not literally criminalize political contribution-making that one knows will 'cause' other persons to violate other sections of Chapter 253." *Fogo,* 830 S.W.2d at 594. Rather, it criminalizes only political contribution-making that is expressly prohibited by other sections; therefore, "one must look elsewhere in [c]hapter 253 to determine under what circumstances it is unlawful ... to *make* political contributions." *Fogo,* 830 S.W.2d at 595. In Fogo's case, the section relied upon by the State prohibited the acceptance of political contributions in excess of one hundred dollars, not the making of such contributions.

■ In contrast, appellant was charged in this case with knowingly accepting a contribution from a corporation that was made in violation of chapter 253. Because the election code clearly provides it is a crime to accept a contribution or expenditure made in violation of chapter 253 and section 253.094 prohibits a corporation from making a contribution to an individual candidate's campaign fund, we find *Fogo* to be distinguishable. We conclude appellant's arguments that he was indicted and prosecuted for an offense not criminalized by Texas statute lack merit. Further, because section 253.003(b) gives reasonably clear notice to the public and law enforcement officials of what behavior is being criminalized, we conclude appellant's arguments that he was denied due process of law and his right to adequate notice are also without merit. *See Fogo,* 830 S.W.2d at 595. We overrule appellant's first, second, and third points of error.

EXTRANEOUS OFFENSE

■ In his fourth and fifth points of error, appellant contends the trial judge erred in admitting evidence of an extraneous crime, wrong, or act over his objections. Under these points, appellant argues we must reverse his conviction because the State failed to provide proper notice of its intent to introduce evidence of appellant's extraneous crime, wrong, or act and that the evidence did not meet

any of the requirements for admissibility under Texas Rule of Evidence 404(b). We disagree.

 "To constitute an extraneous offense, the evidence must show a crime or bad act and that the defendant was connected to it." *Lockhart v. State,* 847 S.W.2d 568, 573 (Tex.Crim.App.1992). The evidence must include some sort of extraneous *conduct* on behalf of the defendant which forms part of the alleged extraneous offense. *Moreno v. State,* 858 S.W.2d 453, 463 (Tex.Crim.App.1993); *Harris v. State,* 738 S.W.2d 207, 224 (Tex. Crim.App.1986) (op. on reh'g). Statements concerning a defendant's thoughts of wrongdoing are merely inchoate thoughts. *Moreno,* 858 S.W.2d at 463. Absent any actual conduct involved which alone or in combination with such thoughts could constitute a bad act, wrong, or crime, a defendant's comments about a desire or intent to commit an offense do not constitute prior misconduct and, therefore, do not implicate rule 404(b). *Massey v. State,* 933 S.W.2d 141, 154 (Tex.Crim.App.1996).

Appellant contends the trial judge should have excluded the testimony of Diana Orozco–Garrett concerning remarks appellant made at a political gathering. Orozco–Garrett testified:

> The reason that I remember the meeting so clearly is that during the meeting at one point [appellant] stood up and he told the group—he said, you know, when we work to get these people in, we've got to get something in return. We've got to sit these people down before they get into office and get the commitment as to what it is we're going to get. And there had been discussions about raising money for computers and different things like that, so I mean—then there were things that, you know-the people that are in office, that we're supporting, we've got to go to them and, you know,

> sit down with them and, you know—in other words, for it to be very clear what they were going to give us in their term....

Orozco–Garrett testified she believed such actions would constitute bribery and that appellant should not be advocating them. After mentioning it to another individual at the meeting who was not bothered by appellant's words, Orozco–Garrett decided to voice her concern to appellant:

> [M]y intent was basically just to take him aside and to let him know that, you know, those might be things he might be hearing, you know, maybe from [others at the meeting], but to let him know that's bribery and he can't do that. And I—you know, I took him aside and I said, you know, [appellant], you need to be very careful with what you say. I said, because what you just said, that's bribery, you can't do that to a public official....

This testimony merely established appellant's inchoate thoughts about seeking "something in return;" it does not establish any extraneous *conduct* addressed by rule 404(b). *See Massey,* 933 S.W.2d at 153 (witness's testimony that appellant wanted to have sex with women or kill them first and then have sex with them did not implicate rule 404(b) because evidence pertained to appellant's thoughts, not conduct); *Moreno,* 858 S.W.2d at 463 (appellant's statements concerning his desire to kidnap and kill an acquaintance were merely inchoate thoughts; they did not constitute prior misconduct and did not implicate rule 404(b)); *Lockhart,* 847 S.W.2d at 573 (date book or calendar with miscellaneous names, figures, and notations did not depict any criminal activity or bad acts and, therefore, was not excludable as an extraneous offense). Because the testimony was not about any extraneous act, wrong, or crime, rule 404(b) was

not implicated. Accordingly, the trial judge did not err in overruling appellant's objections and admitting the evidence. We overrule appellant's fourth and fifth points of error.

We affirm the trial court's judgment.